## LINDELL v. McNAIR.

A conveyance by husband and wife of land held in right of the wife, made after the introduction of the common law in 1816, and before the act of '21 expressly authorising such conveyances, is valid—both by the Spanish law which the adoption of the common law did not repeal, and by the common law itself.

| 4 | 380 |
|---|---|
| 160 | 91 |

APPEAL from the circuit court of St. Louis county.

Marguerite S. McNair, brought her action of ejectment in the circuit court, against Peter Lindell and obtained a judgment there, to reverse which, Lindell appeals to this court. The jury find specially that the land for whici

*Statement of the case.*

this action was brought, descended to her from her grand-mother, who died in the year 1803; that in the year 1805, she intermarried with Alexander McNair, and lived with him as his wife, till his death took place in 1826; that the said Alexander McNair and the plaintiff, then being his wife on the 22nd day of March in the year 1820, made and delived their deed, sealed with their seals, by which they conveyed to William Stokes the tract of land in the declaration mentioned &c. That the said deed was acknowledged by the said McNair and wife, before the clerk of the circuit court of St. Louis county and by him recorded; and that all the title of Stokes was before the commencement of this suit vested in Lindell the defendant. The only point made, is whether a woman could in the year 1820, during coverture, by joining in a deed with her husband, convey land that descended to her in 1803.

H. R. GAMBLE for pltf. in error.

The statute introducing common law, introduces so much "as is not contrary to the laws of this territory." Now by the statute law of the territory, a conveyance of the wife's property was to be executed and acknowledged in the form prescribed by the statute, 1st Oct. 1814—Hempstead's digest, 10. The introduction of the common law then, would only change the form of the conveyance, if the positions of the appellee are correct, because under the common law, the real estate of the wife could be conveyed by fine; so here are two systems—the Spanish and the common law, by both of which, the wife's real estate may be conveyed; and the only question is, whether the form of exercising this right as directed by the stat. of Oct. 1804, is changed by introducing the common law? I say it is not, but is excepted by the very terms of the stat. introducing common law. Therefore, I say that property acquired and held as this was, could be sold in the form here used. 2. I say the common law of fines was not introduced at all, even if the exception in the statute had not been made—2 Kent's com. 127–8, 9; 7 Mass. Rep. 14, 20; 8 Peter's Rep. 658, 687, 739; 15 John. R. 108–9. 3. It may well be questioned whether a right to convey by the wife can be cut off by legislation.

G. A. BIRD for def. in error.

1. The defendant insists that a deed of bargain and sale of lands held in right of the wife, by husband and wife

made after we adopted the common law in 1816, and before the act of 1821, authorising husband and wife, to convey lands held in right of the wife, is absolutely void. So it has been decided by those States that have adopted the common law of England by legislative provision,— Virginia, Vermont, Kentucky and Maryland—1 Tyler's Reports, 42 Sumner v. Wentworth; 3 Harris and McHenry's Rep. 433, Lewis Lessee v. Waters, 1 Peter's Reports 338; 8 do. 88, 90, Watson v. Mercer. In Pennsylvania, there were the same decisions until Pennsylvania passed a retrospective law, curing defects in acknowledgments &c. see the case last cited.

JUNE TERM
1836.

Lindell
v.
McNair.

Opinion of the court by TOMPKINS J.

Opinion of the court.

In the year 1816, the territorial assembly adopted the common law of England and all the statutes of the British Parliament in aid of, or to supply the defects of the said common law, made prior to the fourth year of James the first, and of a general nature and not local to that kingdom; which said common law and statutes, not contrary to the laws of this territory nor repugnant to, nor inconsistent with the constitution or the laws of the United States, it is declared shall be the rule of decision in this territory, till altered &c. The laws of Spain, which prevailed here, when the transfer from France to the United States was made, allowed a woman and her husband to alienate her paraphernal property &c.—3 Febrero, 134, where he says the husband is not prohibited from alienating the paraphernal effects of the wife with her consent, although she do not swear to the contract &c. The author had in a former part of his work, given the definition of dotal and of paraphernal property. Dowry among lawyers, he says, is a species of donation which the woman makes of her own property to her husband by reason of the marriage, and which she or another in her name, delivers to her husband, to sustain by its revenues, the matrimonial charges. In another place, he says the property, which a woman brings into the marriage, without including therein her dowry or which falls to her by any lucrative title after the marriage, is paraphernal—2 Febrero, 127 and 129. The dotal immovable property of the wife could not be alienated by the consent of the husband and wife, unless she swore to the execution of the contract of sale. The paraphernal property, as above stated, might be sold by herself and husband without an oath. It does not appear that this was dotal property. We have no evidence of a marriage

contract between the plaintiff and her late husband. It then was paraphernal property and as such was liable to be sold under the laws of Spain. The territorial legislature made no statutes inconsistent with this law. The common law, as introduced in 1816, does not alter it, for the act introducing the common law, provides that no common law contrary to the laws of this territory shall be in force. A married woman then, in 1820, when this deed was executed under the territorial government, could by joining in a deed with her husband, convey her real estate, which was not dotal real property. The act of 17th July 1807, directs how conveyances of land shall be made and authenticated. This deed was acknowledged before the clerk of the circuit court of St. Louis county. The act of 23rd of December 1815, having conferred on the clerks of the circuit courts the same powers which the act of 1807 had conferred on judicial officers, to take the acknowledgment of such deeds. The deed then of McNair and wife, the plaintiff in this action, it seems to us is good and sufficient to convey all the interest which she at the time of the execution thereof had in the premises. The best informed persons in the territory bought and sold lands of the wife in like situation. We therefore have reason to believe that the law was so understood, both by the inhabitants found here on the occupation of the country by the government of the United States, and by the better informed part of the community, which first migrated from the United States to the newly acquired territory. And why it should be supposed that by the introduction of the common law, the Spanish law was changed in this particular instance, does not appear so very plainly—for to say nothing of the cautious language of the act introducing the common law as above cited, we know that at common law, a married woman could convey her lands by fine. In the statutes of Massachusetts and New York, where they claimed the common law as a part of their heritage before the revolution, married women were in the habit of conveying their lands by joining with their husbands and acknowledging the deed before some officer appointed to take acknowledgments, without any statute allowing them in terms to convey; and the courts of those States have decided such conveyances to be good.—See 2 Kent's com. 127-8, 9; 7 Mass. Rep. 14, 20; 8 Peters' Rep. 637, 658 and 739; 15 Johns. Rep. 108-9. Why then should it be thought that the introduction of the common law among us, in 1816, should repeal the Spanish law allowing married

women to convey? or if indeed it did repeat the Spanish law, it is clear that according to the authorities above cited, a married woman might among us, in 1820, when this deed was executed, convey her lands by conforming to the mode of executing and acknowledging deeds, prescribed by our acts of assembly. But we are of opinion that the Spanish law is in force, and if it were indeed repealed by the introduction of the common law, we would be still of opinion that the power to convey is given by the common law as introduced. We are therefore of opinion that the circuit court committed error, in finding the defendant guilty on the facts found in the special verdict, and its judgment is therefore reversed.